O
JS-6

# United States District Court
# Central District of California

ROGER D. SILK,

    Plaintiff,

    v.

BARON BOND et al.,

    Defendants.

Case № 2:21-cv-03977-ODW (JPRx)

**ORDER GRANTING MOTION TO TRANSFER [53]**

## I.    INTRODUCTION

Defendants Baron Bond and Howard Miller move to transfer this action to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404(a). (Mot. Transfer ("Motion" or "Mot."), ECF No. 53.) Defendants argue that a transfer is necessary for the convenience of the parties and witnesses, and in the interest of justice. (*Id*.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Transfer. (ECF No. 53.)[1]

## II.    BACKGROUND

Plaintiff Roger Silk provided tax, estate, and related planning services to decedent Frank Bond ("Decedent") under three different agreements. (Compl. ¶¶ 20,

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

26, 28, ECF No. 1; *id.* Exs. 1, 2 ("Written Agreements"), ECF Nos. 1-1, 1-2.)  During the negotiations and performance of the contracts, Silk was a resident of California and Decedent was a resident of Maryland.  (*See* Decl. Roger Silk ISO Opp'n Mot. Dismiss ("Silk Decl.") ¶¶ 3-6, ECF No. 36-1 (cited by Silk in support of his Opposition to Defendants' Motion to Transfer).)

From approximately 1991 to 1995, Silk worked exclusively for Decedent under an oral employment agreement ("Private Variable Annuity Agreement").  (Compl. ¶ 20.)  Throughout the negotiations and Silk's performance of the Private Variable Annuity Agreement, Silk traveled to Decedent's office in Maryland.  (Silk Decl. ¶ 4.)  After the Private Variable Annuity Agreement ended in 1995, Silk continued to advise and manage aspects of Decedent's finances, including Decedent's estate.  (Compl. ¶ 21.)

Silk subsequently entered into two additional agreements with Decedent: the "North Point Agreement," (*Id.* ¶ 25, Ex. 1), and the "Westcliffe Agreement," (*id.* ¶ 27, Ex. 2.)  Both agreements were in writing and on Silk's letterhead, which identified his office as being in Sherman Oaks, California.  (*See* Written Agreements.)  During Decedent's lifetime, he paid Silk their agreed-upon performance-based incentive fees.  (Compl. ¶ 22.)  However, under all three agreements, the parties agreed to defer the payments for Silk's estate-planning work and certain income tax deferral work until Decedent's death.  (*Id.* ¶¶ 25–28.)  Accordingly, after Decedent's death in July 2020, Silk made a claim to Decedent's estate in the Baltimore County Orphan's Court for the sum of these deferred payments.  (*Id.* ¶¶ 29, 32.)  Decedent's estate disallowed Silk's claim.  (*Id.* Ex. 3 ("Notice of Disallowance"), ECF No. 1-3.)

Silk then filed his Complaint in this Court, alleging three causes of action: (1) breach of contract for the Private Variable Annuity Agreement, North Point Agreement, and Westcliffe Agreement; (2) unjust enrichment (in the alternative); and (3) promissory estoppel (in the alternative).  (*Id.* ¶¶ 33–62.)  The Court granted Defendants' motion to dismiss for lack of jurisdiction, (Order Granting Mot. Dismiss,

ECF No. 39), and the Ninth Circuit Court of Appeals reversed and remanded, (Op., ECF No. 42).

Following remand, Defendants now move to transfer this case to the federal court in Maryland, pursuant to 28 U.S.C. § 1404(a). (Mot. 1–2.) Silk opposes the Motion. (Opp'n Mot. ("Opposition" or "Opp'n"), ECF No. 58.) Defendants did not file a Reply.

### III.   LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "gives a district court broad discretion to transfer a case to another district where venue is also proper." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007); *see also Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge."). "The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice." *Amini Innovation*, 497 F. Supp. 2d at 1109. "[T]he purpose of [§ 1404] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27 (1960)).

### IV.   DISCUSSION

Defendants argue the Court should transfer venue to the District of Maryland pursuant to § 1404, on the basis that the action could have been brought in that district, and that the convenience of the parties and witnesses, as well as the interest of justice, weigh in favor of transfer. (Mot. 1.) Silk responds that the Court should not

transfer the case because the Central District of California is a proper venue, and his choice of venue should be given substantial weight. (*See generally* Opp'n.)

A district court may transfer an action to another federal district court (the "transferee court") if (1) the action originally might have been brought in the transferee court, and (2) the convenience of parties and witnesses, and the interest of justice, favor transfer. 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). Generally, "substantial weight is accorded to the plaintiff's choice of forum, and a court should not order a transfer unless the 'convenience' and 'justice' factors . . . weigh heavily in favor of venue elsewhere." *Catch Curve, Inc. v. Venali, Inc.*, No. 2:05-cv-04820-DDP (AJWx), 2006 WL 4568799, at *1 (C.D. Cal. Feb. 27, 2006) (citing *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)). "The party seeking the transfer bears the burden of persuasion." *Id.*

**A.    Bringing the Action in the Transferee Court**

An action originally might have been brought in a transferee court when, at the time the action commenced, the transferee court (1) possessed subject matter jurisdiction over the action, (2) had personal jurisdiction over the parties, and (3) was a proper venue. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 760 (C.D. Cal. 2016) (citing *A.J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. Cal.*, 503 F.2d 384, 386–88 (9th Cir. 1974)).

Regarding jurisdiction, Defendants plausibly assert that at the time the action commenced, the United States District Court for the District of Maryland possessed subject matter jurisdiction over the action, and personal jurisdiction over the parties. (Mot. 9–10.) Silk does not directly dispute that the case could have been initially brought there or oppose the Motion on these bases. (*See generally* Opp'n.) He has therefore conceded these issues. *See Heraldez v. Bayview Loan Servicing, LLC*, No. 2:16-cv-1978-R, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016) ("Failure to oppose constitutes a waiver or abandonment of the issue."), *aff'd*, 719 F. App'x 663

(9th Cir. 2018). Accordingly, the Court accepts Defendants' jurisdictional assertions that the action originally might have been brought in the District of Maryland, for the purposes of this Motion.

As for venue, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," or "in which a substantial part of the events or omissions giving rise to the claim occurred," or, failing that, in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Here, as the parties do not dispute the District Court of Maryland's personal jurisdiction over the parties in this case, the existence of personal jurisdiction over Defendants provides a basis for finding the Maryland venue proper. Thus, venue is proper in the District of Maryland.

As the United States District Court for the District of Maryland would have possessed both subject matter and personal jurisdiction, and as venue is proper there, this case could have originally been brought in the transferee court.

**B.      Convenience of the Parties and Witnesses, and Interest of Justice**

The Court must next determine whether the convenience of the parties and witnesses, as well as the interest of justice, favor transfer. *See* 28 U.S.C. § 1404(a).

1.   *Convenience of the Parties and Witnesses*

"Importantly, while the convenience of party witnesses is a factor to be considered [in a § 1404(a) motion], the convenience of non-party witnesses is the more important factor." *Ironworkers Loc. Union No. 68 & Participating Emps. Health & Welfare Fund v. Amgen, Inc.*, No. 2:07-cv-5157-PSG (AGRx), 2008 WL 312309, at *5 (C.D. Cal. Jan. 22, 2008) (citing S*aleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005)). However, a transfer is not appropriate merely to shift the inconvenience from one party to another. *Amini Innovation*, 497 F. Supp. 2d at 1109–10.

Regarding the convenience of the parties, Silk is located in Nevada, which is California-adjacent, and Bond and Miller are both located in Maryland. (Compl. ¶¶ 8–9; Mot. 1 n.1 (providing that Bond has relocated to Florida but maintains a home and office in Maryland).) Accordingly, a transfer of forum from California to Maryland would simply shift the inconvenience of traveling a longer distance from Defendants to Silk. As such, this factor is neutral.

Regarding the convenience of the witnesses, Defendants list the following witnesses Silk anticipates calling for testimony in this case: Mayrov Bond (located in Florida), Jim Lintott (located in Virginia), Jeff Daley (located in Maryland), Neil Axler (located in New York), and expert witness Peter Hickey (located in Illinois). (Mot. 14.) None of these witnesses are in California, nor are they located on or near the West Coast. Furthermore, Silk does not dispute that he expects to call these witnesses to testify on his behalf or that their testimony will be probative. (*See generally* Opp'n.) As a majority of the witnesses are geographically located closer to Maryland than California, Maryland appears to be a more convenient forum to them. And as Silk does not dispute that the value of their testimony will be probative, this factor favors transfer.

Silk argues that Defendants cannot use his potential witnesses to support this factor, relying on *Ansari v. UnitedHealthcare Ins. Co.*, No. 2:19-cv-04068-JAK (JPRx), 2019 WL 6729716, at *4 (C.D. Cal. Sept. 25, 2019). (Opp'n 13.) However, the Court does not read *Ansari* to require that the witnesses' convenience be based solely on the moving party's witnesses; Silk's witnesses are also a relevant consideration before the Court. Therefore, the witnesses' convenience favors transfer.

2. *Interest of Justice*

Next, in evaluating the interest of justice, courts may consider the following factors: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to

the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Courts may also consider "the administrative difficulties flowing from court congestion [and] the 'local interest in having localized controversies decided at home.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The Court considers the relevant factors in turn.

      a.   <u>Location</u>

In a contracts dispute, courts consider the locations of relevant substantial events, like where the parties negotiated, executed, and performed or breached the agreements in dispute. *Niagra Bottling, LLC v. Orion Packaging Sys., LLC*, No. 5:12-cv-00498-VAP (DTBx), 2012 WL 1747398, at *5 (C.D. Cal. May 14, 2012). Courts specifically consider the location where the majority of the agreements in a breach of contract case were negotiated and executed. *Jones*, 211 F.3d at 499.

Here, during the negotiation and execution of the two written agreements, Silk was in California and Decedent was in Maryland. (Silk Decl. ¶ 8; *see* Aff. Howard Miller ISO Mot. Dismiss ¶ 5, ECF No. 30-2.) However, the parties dispute the location Silk and Decedent negotiated and executed the oral agreement. On the one hand, Defendants argue Silk and Decedent negotiated and executed the oral agreement in Maryland. (Mot. 13.) On the other, Silk argues that he was "living and working in California" "at all relevant times" pertaining to this lawsuit, although he does not contest that Decedent was then-located in Maryland. (Opp'n 6 (citing Silk Decl.).) Accordingly, the Court finds it reasonable to conclude that the parties negotiated and executed all three agreements in both Maryland and California. Thus, this factor weighs neutral.

### b. Familiarity with governing law

In diversity cases, courts must determine which venue would be most familiar with the law governing the action. *Van Dusen*, 376 U.S. at 645. This factor "does not ask whether a court is equally capable" of applying a state's laws; rather this factor "focuses on the familiarity of each forum with the applicable law." *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, No. C 06-2469 CW, 2006 WL 2868971, at *5 (N.D. Cal. Oct. 6, 2006); *cf. Metz*, 674 F. Supp. 2d at 1148 (finding that courts in both California and New York were fully capable of applying New York substantive law).

Here, Silk's causes of action are based primarily on Maryland statutory law for breach of contract. Although both the California and Maryland courts are equally capable of applying Maryland law, courts in Maryland regularly adjudicate matters arising under Maryland state law and are thus more familiar with the law governing the case. On the other hand, it is reasonable to infer that courts in the Central District of California, including this Court, adjudicate fewer cases arising under Maryland law, and as such are less familiar with the law governing this case. Accordingly, this factor favors transfer.

### c. Local interest

The venue where events occur has a "local interest in having localized controversies decided at home." *Decker Coal*, 805 F.2d at 843; *see Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009) (finding one district's local interest stronger "because the events at issue took place there"). Here, the events relevant to Silk's causes of action took place in both Maryland and California, so this factor is neutral.

### d. Ease of access to evidence/sources of proof

"[The] ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Metz*, 674 F. Supp. 2d at 1149. Accordingly, the

moving party must show some evidence to suggest that the transportation of evidence to the original venue would be difficult. *See Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 963 (C.D. Cal. 2005) (finding that "the movant must show particularly the location [and] difficulty of transportation . . . of such records").

Here, Defendants have already produced electronically scanned copies of their hard-copy files, which can readily be accessed as evidence. (*See* Opp'n 13). This established electronic availability suggests the parties will find evidence and discovery easy to access in either forum. As such, the Court finds that the ease of access to evidence proves the same in both Maryland and California, and this factor is neutral.

e.  Costs of litigation

Regarding the costs of litigation, Silk is not a current resident of California. Thus, if the case proceeds in California, he will incur costs of travel regardless of venue, though his litigation costs would reasonably be less if traveling from Nevada to California than if traveling to Maryland. However, if the case proceeds in Maryland, the costs of litigation would be reduced for a majority of people involved. Bond is located in Maryland, and Miller, along with most of the non-party witnesses, is located on the East Coast. That means their combined costs of travel will be less to Maryland than to California. As the costs of litigation will be greater on balance to litigate in California than in Maryland, this factor favors transfer.

f.  Compulsory process

A subpoena may command a person to attend a trial, hearing, or deposition within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1). A subpoena may also command a person to attend a trial, hearing, or deposition within the state where the person resides, is employed, or regularly transacts business in person if the person would not incur substantial expense. *Id*. This means that, "[f]or non-party witnesses, the court's subpoena power extends to anywhere within the district and/or one hundred miles of

the place of trial." *Huynh v. Mercedes-Benz USA, LLC*, No. 2:22-cv-5045-MWF (SKx), 2022 WL 18142559, at *4 (C.D. Cal. Nov. 8, 2022) (quoting *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).

Here, the majority of the anticipated non-party witnesses are within neither 100 miles of the Central District of California nor the state of California, and as a result, many of the relevant non-party witnesses will likely be outside the Court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1). In contrast, several of the non-party witnesses are within 100 miles of the District Court for the District of Maryland. Thus, the availability of compulsory process favors transfer.

g.  Plaintiff's choice of forum

Lastly, absent a strong showing of inconvenience, a plaintiff's preference of forum will not be disturbed. *Decker Coal*, 805 F.2d at 843. However, where the plaintiff is not a resident of the preferred forum, less deference is given to their choice of forum. *See Ainsworth v. Experian Info. Sols., Inc.*, No. 8:10-cv-01706-CJC (RNBx), 2011 WL 2135713, at *2 (C.D. Cal. May 12, 2011) (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001)). Here, Silk is a resident of Nevada, not California, which lessens any deference given to his choice of forum otherwise. (*See* Compl. ¶ 8.) Thus, Silk's choice of forum is entitled to only minimal deference under the circumstances of this case.

**C.  Conclusion—Motion to Transfer**

In sum, the convenience of the witnesses, familiarity with governing law, cost of litigation, and compulsory process factors favor transfer, and the remaining factors are neutral. The balance of the convenience and justice factors thus overcomes the minimal deference given to Silk's forum preference. As this action could originally have been brought in the United States District Court for the District of Maryland, and as Defendants establish that the convenience of the parties and witnesses, as well as

the interest of justice, favor transfer, the Court finds transfer to Maryland is warranted under the circumstances of this case.[2]

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Transfer pursuant to 28 U.S.C. § 1404. (ECF No. 53.) All dates and deadlines are **VACATED**. The Clerk of the Court shall **TRANSFER** this case to the United States District Court for the District of Maryland, 101 W. Lombard Street, Baltimore, Maryland, 21201.

**IT IS SO ORDERED.**

February 29, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[2] Defendants' request, in the event that the Court declines to transfer this case, that the Court order limited jurisdictional discovery in advance of any merits discovery. (Mot. 19.) However, as the Court finds transfer appropriate, Defendants' request in the alternative is denied as moot.

11