## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROGER SILK,

     *Plaintiff*,

v.

     Case No. 24-cv-0625-ABA

BARON BOND, *et al.*,

     *Defendants*.

### MEMORANDUM OPINION AND ORDER

This case arises out of Plaintiff Roger Silk's contention that Frank Bond promised that, upon Frank's death, his estate would pay Silk an "incentive fee" for certain financial planning advice provided to Frank.[1] After Frank's death, the personal representatives of Frank's estate, Defendants Baron Bond and Howard Miller, took the position that Silk was not owed any "incentive fees" because the alleged contracts were either never executed, unenforceable, or did not result in the required tax savings. The parties filed cross motions for summary judgment and Silk also filed a motion for sanctions for alleged discovery violations. On March 31, 2026, the Court granted in part and denied in part Defendants' motion for summary judgment and denied Silk's motion for summary judgment and motion for sanctions. *Silk v. Bond*, Case No. 24-cv-0625, 2026 WL 872369 (D. Md. Mar. 31, 2026). Silk has now filed a motion for reconsideration "request[ing] that the Court reconsider its dismissal of Count Two, its ruling concerning the applicability of the Maryland Dead Man's Statute to this litigation,

---

[1] The Court will refer to Frank Bond as Frank herein, as his son, Baron Bond, is a party to this case.

and its denial of Plaintiff's motion for sanctions related to Defendants' discovery misconduct." ECF No. 138 at 1. For the reasons that follow, Silk's motion for reconsideration will be denied.

## I.   STANDARD OF REVIEW[2]

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." *See also McKinsty v. Swift Transp. Co., of Ariz., LLC*, Case No. 15-cv-01317-VAP-SP, 2017 WL 8943524, at *2 (C.D. Cal. Sept. 18, 2017) (quoting *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005) (Ginsburg, J., dissenting on other grounds) (a district court "has the inherent power to reconsider and modify such an order 'prior to the entry of judgment.'") (internal quotations omitted)). Pursuant to the Central District of California's Local Rules, motions for reconsideration of an interlocutory order may only be made

> on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

---

[2] As this case was transferred from the Central District of California under 28 U.S.C. § 1404(a) and federal subject matter jurisdiction in this case was based on diversity of citizenship, this Court must apply California choice-of-law rules. *Silk*, 2026 WL 872369, at *9 (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Under California's choice-of-law rules, Maryland substantive law and California procedural rules apply (unless any procedural rule is displaced by a Federal Rule). *Id.* (citing Cal. Civ. Code § 1646; *Ury v. Jewelers Acceptance Corp.*, 227 Cal. App. 2d 11, 16 (1964)); *Berk v. Choy*, 607 U.S. 187, 192 (2026).

C.D. Cal. Local Rule 7-18. "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." *Id.*[3]

## II.   DISCUSSION

For purposes of this opinion, the Court does not repeat discussion in its summary judgment opinion. The Court assumes the parties' familiarity with that opinion, reconsideration of which Silk has requested.

### A.   Count Two[4]

Count Two relates to a written agreement signed by both Silk and Frank dated June 28, 1999 (the "North Point Agreement"). *Silk*, 2026 WL 872369, at *3. The North Point Agreement relates to advice Silk provided to Frank in 1998 about transferring his interest in North Point Shopping Center Limited Partnership (which the parties variously have referred to as "North Point" or "N.P." or "NPSC") into a Grantor Retained Interest Trust ("GRIT"). *Id.* Frank initially transferred his interest in North Point into

---

[3] In his motion for reconsideration, Silk utilizes the "clear error" standard that applies to motions to alter judgments under Federal Rule of Civil Procedure 59. ECF No. 138-1 at 5. After Defendants pointed out that the Local Rule standard applies to Rule 54 motions for reconsideration, ECF No. 140 at 2 n.1, Silk briefly states that "to the extent the local rule 'conflicts with the Federal Rule,' it does not apply," ECF No. 142 at 2 (quoting *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013)). Silk, however, contends that his motion for reconsideration can still be considered under the Local Rule as his motion for reconsideration is based on a "failure to consider material facts." *Id.* (citing C.D. Cal. Local Rule 7-18(c)). Silk does not allege that there actually is any conflict between C.D. Cal. Local Rule 7-18 and Federal Rule of Civil Procedure 54(b). Regardless, the Court will consider Silk's motion for reconsideration as asserting both a failure to consider material facts as well as an error of law.

[4] For a more detailed background on the Count Two claim, see *Silk*, 2026 WL 872369, at *3.

the GRIT, but, in 2011, he purchased the interest back and it was therefore subject to taxation upon his death. *Id*. Therefore, Frank did not have any actual estate tax *savings* from having previously entered into the North Point Agreement. *Id*.

Much of the dispute for Count Two focused on the meaning of Step One of the calculation terms within the North Point Agreement. Step One required "[c]omput[ing] the fair market value as of [Frank's date of death] of the partnership interests of Investment NP owned by the GRIT on January 1, 1999 and any successors to said partnership interests." *Id*. (quoting ECF No. 1-1 at 2) (internal quotations omitted). "The North Point Agreement further provides that '[t]o the extent that all necessary information to complete the computation is unavailable, the accountants preparing the incentive fee calculation shall have the right to make reasonable and fair assumptions to arrive *at the results intended by us; namely, an incentive fee to [Silk] of fifteen percent of [Frank's] estate taxes saved by the Investment NP transaction*.'" *Id*. (quoting ECF No. 1-1 at 3) (emphasis added).

In granting summary judgment to the Defendants as to Count Two, the Court explained that, while "[t]he plain language of Step One of the North Point Agreement does not specify whether the calculation of the fair market value of the North Point interest on the date of Frank's death was contingent upon whether the interest was still owned by the GRIT on that date," "look[ing] to the entirety of the contract," "it is clear from the express language . . . that the parties' intent was for Silk's incentive fee to be contingent upon *actual* estate taxes saved." *Id*. at *13 (emphasis in original).

Silk contends that, because the Court identified an ambiguous provision in the contract (within Step One of the calculation methodology), the Court should have looked only at that specific provision rather the contract as a whole—which contains

unambiguous language that the "results intended" by the parties were that an incentive fee would be paid only if and when there were "estate taxes saved [by Frank's estate] by the Investment NP transaction." ECF No. 1-1 at 3. In arguing that the Court erred in considering the agreement as a whole, Silk contends that "the Court should not [have] resolve[d] the agreement's ambiguities on summary judgment" but instead should have permitted him to present Count Two to a jury. ECF No. 138-1 at 7 (citing *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389 (1985); *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1077 (9th Cir. 2010) ("*Cachil*")) (citations omitted).

Silk, however, conflates the rules regarding an ambiguous contractual *provision* and an ambiguous *contract*. Under Maryland law,[5] "[i]n interpreting a contract *provision*, [a court must] look to the entire language of the agreement, not merely a portion thereof." *Nova Rsch., Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 448 (2008) (citing *Jones v. Hubbard,* 356 Md. 513, 534–35 (1999)) (emphasis added). The cases to which Silk cites hold only that, if extrinsic evidence is consulted to determine the intention of the parties *and* if that "extrinsic evidence presents disputed factual issues, construction of the ambiguous *contract* is for the jury." *Pac. Indem.*, 302 Md. at 389 (emphasis added); *see also Cachil*, 618 F.3d at 1077 ("when there is a material conflict in extrinsic evidence supporting competing interpretations of ambiguous contract language the court . . . must [] render the evidence to the factfinder for evaluation of its credibility.")).

Therefore, only if the Court had relied upon extrinsic evidence, such as the emails

---

[5] As previously stated, Maryland substantive law applies to the breach of contract claims. *See* n. 2, *infra.*

and memoranda written by Defendant Miller as Silk had requested and still requests this Court to consider *and* if that extrinsic evidence had presented a factual dispute, would these cases apply. As the Court stated, Defendant "Miller's emails cannot create a contractual obligation not stated in the contract." *Silk*, 2026 WL 872369, at *13. As the Court previously held, the North Point Agreement is *unambiguous* when read as a whole. It unambiguously establishes that the parties' intent was for Silk's fee to be contingent upon *actual* taxes saved. Thus, there is no factual issue for a jury to determine.

Silk also argues that "genuine issues would remain for trial regarding Frank Bond's actions and whether they constituted breach of the covenant of good faith and fair dealing." ECF No. 138-1 at 9 (citing *Clancy v. King*, 405 Md. 541, 571 (2008)). Contrary to C.D. Cal. Local Rule 7-18, this is an argument Silk already raised in prior briefing and that the Court previously addressed. *See Silk*, 2026 WL 872369, at *12 (citing ECF No. 116 at 11); *see also In re Marriot Int'l, Inc.*, Case No. [], 2021 WL 1516028, at *3 (D. Md. Apr. 16, 2021) (quoting *Cezair v. JPMorgan Chase Bank, N.A.*, Case No. 13-cv-2928-DKC, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014) ("'[A] motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court.'"). As the Court already explained, the contract is unambiguous that "[n]othing in the North Point Agreement prevented Frank from deciding later that he no longer wanted to follow that advice, and nothing in the contract entitled Silk to a contingent fee based on hypothetical (as opposed to actual) tax savings." *Silk*, 2026 WL 872369, at *13. Despite Silk pointing to an alleged lack of evidence surrounding the undisputed transfer, the Court already noted that "[t]he record does not reveal the reasoning for Frank's decision to reverse the

transaction." *Id.* at *12 (citing ECF No. 116 at 11). Therefore, there is no factual dispute regarding the reversal of the transaction and no evidence from which a jury could infer that the reversal was done in bad faith.

Accordingly, Silk has not shown that the Court committed a clear error of law or that there was any material fact not considered by this Court, and his motion for reconsideration as to Count Two will be denied.

### B.    Maryland's Dead Man's Statute

Silk next argues that the Court's ruling regarding Maryland's dead man's statute "misapprehended the law and should be reconsidered," and, "to the extent this Court still concludes that it should not follow" what Silk refers to as "Ninth Circuit precedent," this Court "should certify an interlocutory appeal to allow the California Supreme Court to address this question of California law." ECF No. 138-1 at 11.

As to the first point, Silk contends that "[w]hile this Court's summary judgment opinion recognizes that California's choice-of-law rules apply, the Court did not then proceed to analyze *how a California court would answer the question* of whether Maryland's Dead Man's Statute is substantive or procedural." *Id.* (citing *Silk*, 2026 WL 872369, at *9; *Equitable Life Assurance Soc'y of U.S. v. McKay*, 837 F.2d 904, 905 (9th Cir. 1988) ("*McKay I*")) (emphasis in original; internal citations omitted). Silk is incorrect. As Silk notes, immediately before the Court evaluated the question of whether Maryland's dead man's statute was substantive or procedural, it explained that California's choice-of-law rules apply and that, based on those rules, Maryland substantive law would apply to this case. *Silk*, 2026 WL 872369, at *9. The Court then went on to state: "As Rule 601 explicitly directs the Court to look to state law for the applicability of dead man's statutes and federal courts sitting in diversity look to state

7

substantive law, it is clear that the dead man's statute is a substantive rather than procedural law. As Maryland substantive law governs this dispute under California's choice-of-law rules, Maryland's dead man's statute also applies." *Id.* To the extent there was any ambiguity in the Court's prior ruling, this Court finds that the California Supreme Court, in light of the construction of Federal Rule of Evidence 601, advisory notes regarding the applicability of dead man's statutes, and the wording of Maryland's dead man's statute, would likely determine that the statute is substantive and as such applies to this case.

As to Silk's second point, in which he contends that the Court failed to follow Ninth Circuit opinions issued in a case (applicable here because this case was transferred from a district court in California) that he describes as having "decided that precise issue in a decision that is controlling and binding on this Court," Silk overstates the holding of the *McKay* opinions and their application to this case. ECF No. 142 at 5. In *McKay I*, the Ninth Circuit, similar to this Court, found that the key "question before [it was] whether the Washington Deadman's Statute is substantive or procedural. If it is substantive, it should be applied as Washington substantive law. If it is procedural, it should not be applied because only Oregon procedural rules should be applied." *McKay I*, 837 F.2d at 905. The Ninth Circuit then opted to certify the question to the Oregon Supreme Court to determine how it would answer the question regarding *Washington's* dead man's statute. *See id.* at 906. The Oregon Supreme Court then opined that, based on Oregon law and precedent, Washington's dead man's statute was procedural. *Equitable Life Assurance Soc'y of U.S. v. McKay*, 760 Or. 493, 498 (1988) ("*McKay II*"). Based on the answer to the certified question, the Ninth Circuit held that the district court had improperly applied Washington's dead man's statute when it should have

applied Oregon procedural law. *Equitable Life Assurance Soc'y of U.S. v. McKay*, 861 F.2d 221, 223 (9th Cir. 1988) ("*McKay III*"). Nowhere in the Ninth Circuit decisions did that court (or the Oregon Supreme Court for that matter) hold that dead man statutes *generally* are procedural or that the highest court of all other states within the Ninth Circuit would have come to the same conclusion about Washington's or any other states' dead man's statutes. The fact that this Court ruled that the *California* Supreme Court would likely determine that *Maryland's* dead man's statute was substantive is in no way failing to follow precedent that the *Oregon* Supreme Court determined that *Washington's* dead man's statute was procedural. Silk has provided no basis to support his assertion that this Court failed to follow binding precedent and also does not point to any material fact that the Court failed to consider.

Silk also continues to point to Defendants' statements in a brief filed in the Ninth Circuit that "Maryland's Dead Man's Act would be inoperative in any trial before the district court," ECF No. 106-10 at 50, to argue that "the Court effectively granted Defendants a change of law compared to what would have applied if the case had remained in California," ECF No. 142 at 5. *See* ECF No. 105-1 at 14; ECF No. 116 at 3 (making the same argument). The Court has already ruled that it "must apply the governing law, not a party's interpretation of law." *Silk*, 2026 WL 872369, at *8 (citing *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Grove City Coll. v. Bell*, 465 U.S. 555, 562 n. 10 (1984), *superseded by statute on other grounds* (a party's "concession [on a point of law], of course, is not binding on [the court]")).

9

Therefore, Silk has not shown that the Court committed clear error of law or failed to consider a material fact in ruling that Maryland's dead man's statute applies and, thus, his motion for reconsideration of the application of Maryland's dead man's statute will be denied.

Finally, Silk has not plausibly alleged a basis for certifying the question to the California Supreme Court. First, contrary to C.D. Cal. Local Rule 7-18, this request does not constitute a material fact that the Court failed to consider or any other basis for a motion for reconsideration (both because this is not a fact and because it constitutes an argument that could have been raised in prior briefing). Second, Silk restates the same arguments from the original briefs for his belief that two Maryland courts held that Maryland's dead man's statute is procedural, which this Court has already rejected. *See id.* ("Silk points . . . [to] two cases in which courts stated, without deciding, that Maryland's dead man's statute may be procedural in nature.") (citing ECF No. 105-1 at 15 & n.2); *see also Zadnik v. Ambinder*, 258 Md. App. 1, 14 n.11, 15 (2023) (noting that the admissibility of evidence is generally a procedural issue, but holding that neither state's dead man's statute applies to wrongful death actions); *Maltas v. Maltas,* 197 F. Supp. 2d 409, 425 (D. Md. 2002), *rev'd on other grounds*, 65 F. App'x 917 (4th Cir. 2003) (not deciding whether Maryland's dead man's statute was procedural or substantive, but noting a possibility that the now-Supreme Court of Maryland would find it to be procedural)). Therefore, both to the extent Silk requests certification for the first time in this motion for reconsideration and to the extent he raises it based on arguments already rejected by this Court, basis for reconsideration is improper and thus the request will be denied.

### C.   Sanctions

Silk also requests that the Court reconsider his request for default judgment as a sanction for alleged discovery violations. ECF No. 138-1 at 14–17. Silk's request raises no new material facts or any material facts not considered by this Court. Silk does properly note (ECF No. 138-1 at 15 & n.6) that Defendants were under an obligation to log privileged documents, an obligation this Court confirmed via order on March 20, 2025. ECF No. 89 ¶ 9. To the extent there was language in the Court's summary judgment opinion suggesting otherwise, *Silk*, 2026 WL 872369, at *7 (stating that "Plaintiff ha[d] not shown that . . . Defendants ha[d] failed to comply with a specific court order"), that statement was incorrect. But the Court also explained that, "[t]o the extent that any prejudice has resulted to Plaintiff, it does not rise to the level of justifying sanctions on Defendants and certainly not to the extent of default judgment as a sanction." *Silk*, 2026 WL 872369, at *7. Silk has presented no new material facts to support his contention that the withholding of the notes that were otherwise subject to the attorney-client privilege was done in bad faith or that the degree of prejudice was so high as to justify default judgment as a sanction. *See* ECF No. 138-1 at 15; *see also Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.,* 872 F.2d 88, 92 (4th Cir. 1989) (setting out the standard for granting default judgment as a sanction); *Projects Mgmt. Co. v. Dyncorp Int'l LLC,* 734 F.3d 366, 373–74 (4th Cir. 2013) (explaining the factors a court must consider before dismissing a case based on wrongdoing of a party). Given that Silk repeats the same arguments already rejected by the Court, Silk's motion to reconsider the motion for sanctions will be denied.

## III.   CONCLUSION AND ORDER

For the aforementioned reasons, the Court hereby ORDERS that Plaintiff's

motion for reconsideration (ECF No. 138) is DENIED.


Date:  June 8, 2026                                              _____/s/_____
                                                                            Adam B. Abelson
                                                                            United States District Judge