### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

ROGER SILK,

    *Plaintiff,*

    v.

BARON BOND, *et al.,*

    *Defendants.*

Case No. 24-cv-625-ABA

### MEMORANDUM OPINION AND ORDER

Plaintiff Silk's claims in this case relate to transactions between him and Frank Bond, who died in 2020. The Court previously granted Defendants summary judgment on Count 2, which pertained to the North Point Shopping Center Limited Partnership, and one aspect of Count 3. *Silk v. Bond*, No. 24-cv-0625-ABA, 2026 WL 872369, at *12–14 (D. Md. Mar. 31, 2026) ("*Silk I*").[1] The trial, set for next month, pertains to Counts 1 and 3. Count 1 relates to taxes allegedly saved based on Frank Bond's use of a private variable annuity. Count 3 relates to investments in two apartment buildings investments, referred to as Westcliffe and Harbond.[2]

---

[1] The Court also granted summary judgment to Defendants on Counts 4 and 5. *Silk I*, 2026 WL 872369, at *16. The Court denied Silk's motion for reconsideration. *Silk v. Bond*, No. 24-cv-0625-ABA, 2026 WL 1648979 (D. Md. June 8, 2026) ("*Silk II*").

[2] Count 3 also asserted a claim related to another property that was identified in an earlier version of the Apartments Agreement, but the Court granted Defendants summary judgment as to Warwick because a later version of the Apartments Agreement in October 1999 superseded the August 1999 version and eliminated Warwick from that agreement. *Silk I*, 2026 WL 872369, at *14.

The Court held a pretrial conference and hearing on the parties' motions in limine on Tuesday, July 21. Prior to that hearing, the Court issued an order addressing disputes related to the timeliness of Plaintiff's witness and exhibit disclosure, authentication, and expert reports. ECF No. 162. This memorandum opinion and order addresses application of the Maryland dead man's statute and the motions to exclude experts' testimony. The Court assumes the parties' familiarity with its prior rulings; the factual record and legal frameworks described in those rulings are incorporated by reference herein.

## I.    Dead Man's Statute

Maryland's "dead man's statute" imposes limits on the admissibility of testimony by a witness against the personal representative of an estate, in certain circumstances. The statute provides in pertinent part as follows:

> A party to a proceeding by or against a personal representative . . . as such, in which a judgment or decree may be rendered for or against them . . . may not testify concerning any transaction with or statement made by the dead . . . person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead . . . person has been given already in evidence in the same proceeding concerning the same transaction or statement.

Md. Code Ann., Cts. & Jud. Procs. § 9-116.

As this Court has previously explained, although that statute is a rule of evidence, and ordinarily state evidence rules do not apply in federal court, the Maryland dead man's statute applies here because Federal Rule of Evidence 601 provides that, "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision," Fed. R. Evid. 601, and because under the choice-

of-law rules of California (where this case was originally filed), Maryland substantive law applies. *See Silk I*, 2026 WL 872369, at *7–9.

Silk is undisputedly a "party to a proceeding . . . against a personal representative" of Frank Bond's estate in which Silk seeks a "judgment . . . against them." *See id.* There also is no dispute that Frank Bond has not already given any "testimony" in this case and thus the last exception (for where "the testimony of the dead . . . person has been given already in evidence in the same proceeding") undisputedly does not apply; this case was not filed until after Frank Bond's death.

At summary judgment, and in denying Silk's motion for reconsideration, the Court explained that the Maryland dead man's statute applies to this case and explained its overall contours and relevance here. *Silk I*, 2026 WL 872369, at *7–9; *Silk II*, 2026 WL 1648979 at *4–5. At that stage, Silk had identified sufficient admissible evidence regarding the existence of the agreements at issue in Count 1 (related to the annuity) and Count 3 (related to the Harbond and Westcliffe properties), and regarding the terms of those agreements to permit him to present those remaining claims to a jury. That left open various questions, however, regarding whether aspects of Silk's proffered testimony are barred by the dead man's statute, and whether the statute requires exclusion of documentary evidence. In advance of trial, Defendants contend that the bulk of Plaintiff's exhibits and all of Silk's anticipated testimony should be excluded under the dead man's statute.

To start, the Court overrules Defendants' objections to the admission of <u>documents</u> based on the dead man's statute. *See* ECF No. 147-1 (objecting to Plaintiffs' exhibits 1–4, 6–14, 16–18, 22, 24, 27 and 31–32 based on, among other objections, the

dead man's statute); *see also* ECF No. 145 at 7–8 (motion in limine related to these documents); ECF No. 160 at 5–6 (arguing that excluding those documents is required because "creative attempts to circumvent the Dead Man's Statute under the guise of authenticating documents can and should be rejected"). By the statute's express terms, it operates solely to preclude a party such as Silk from "*testify[ing]* concerning any transaction with or statement made by the dead . . . person, personally or through an agent since dead," unless an exception applies. Md. Code, Cts. & Jud. Proc. § 9-116 (emphasis added). If Silk's testimony were necessary to authenticate a document or otherwise establish an evidentiary foundation for admissibility of a document, the statute conceivably could pose an obstacle to admissibility. But as the Court already ruled, Silk has made a prima facie showing of authenticity for all of his exhibits, in all but one instance based at least in part on the documents having been produced by Defendants. *See* ECF No. 162 at 2–3; *see also Estate of Genecin v. Genecin*, 363 F. Supp. 2d 306, 313–14 (D. Conn. 2005) (applying Maryland's dead man's statute and explaining that "Maryland courts have long recognized that testimony limited to identifying documents or signatures is not barred by Maryland Dead Man's Statute") (citing *Stacy v. Burke*, 259 Md. 390, 406 (1970), and *Montgomery County v. Herlihy*, 83 Md. App. 502, 514 (1990)). There may be other reasons one or more of the objected-to exhibits are inadmissible (e.g., hearsay or relevance), but the dead man's statute itself does not form a basis for excluding those documents. Accordingly, Defendants' "Dead Man's Statute" objections to Plaintiff's exhibits are overruled.

But what about Silk's testimony? Defendants contend that because all of Silk's testimony will pertain to "transactions" with Frank Bond, all of his otherwise admissible

testimony is barred by the statute. ECF No. 145 at 5–7; ECF No. 160 at 2–5. Silk

contends that the dead man's statute should be strictly construed to allow as much of his

testimony in as possible, including testimony about what he understood the terms of

arguably ambiguous agreements to mean and conversations with Defendants before and

after Frank's death.3 ECF No. 158 at 2–6.

The Maryland cases interpreting the dead man's statute make clear that the

proper boundaries of Silk's testimony at trial fall between these two positions. Those

cases reflect several principles with pertinence to the present disputes.4

First, "Maryland courts have strictly construed the statute . . . so as to render

admissible as much testimony as possible while preventing self-interested perjury." *In

re Estate of Duraiswamy*, 269 Md. App. 413, 435–36 (2026) (quoting *Herlihy*, 83 Md.

App. at 511–12). That emphasis on narrow construction arises in part because "seal[ing]

the lips of a party in a proceeding 'by or against' a personal representative" can risk

"creat[ing] an 'injustice to the survivor.'" *Farah v. Stout*, 112 Md. App. 106, 114 (1996)

---

3 Silk also asserts that Defendants' motion fails on a threshold requirement of not
specifying the parts of his testimony that Defendants believe is improper and thus
should be denied as a whole. ECF No. 158 at 2–3. The Court disagrees; the parties'
positions are sufficiently tailored to at least some aspects of Silk's anticipated testimony
to permit the rulings contained herein.

4 There are other important principles from those cases, including that the statute only
applies to testimony by parties (as opposed to other witnesses), *see, e.g.*, *Snyder v.
Crabbs*, 263 Md. 28 (1971), and only applies when a party is seeking a judgment that
would "'tend to increase or diminish the estate of the decedent by establishing or
defeating a cause of action by or against the estate,'" *Zadnik v. Ambinder*, 258 Md. App.
1, 14 (2023) (quoting *Reddy v. Mody*, 39 Md. App. 675, 679, *cert. denied*, 283 Md. 736
(1978)). Those principles are less pertinent to the present disputes because Mr. Silk is a
party and is seeking a recovery that, if successful, would diminish Frank Bond's estate.

(quoting *Reddy*, 39 Md. App. at 679). But "strictly constru[ing] the statute," *Duraiswamy*, 269 Md. App. at 435, does not mean courts may or should disregard its plain terms.

Second, a core category of testimony excluded under the statute is testimony that the witness "had an agreement or contract" with the decedent. *Farah*, 112 Md. App. at 114 (holding that the statute "[o]bviously" barred that testimony). But because one element to prove contract formation is a meeting of the minds between the alleged contracting parties (here, Silk and Frank Bond), if a witness cannot testify that he "had an agreement" with the decedent, the statute also may require limiting a witness's testimony about the meaning of ambiguous and disputed contractual terms. In *Farah*, for example, the plaintiff had cared for the one of the decedents (Mrs. Sanderson) for two and a half years before her death, and contended that the husband (Mr. Sanderson, who also died before the case was filed) had promised a bequest "in exchange for [Plaintiff's] agreement to care for Mrs. Sanderson." *Id.* at 110. The court explained that Plaintiff was not only barred from testifying "that she had an agreement or contract with Mr. Sanderson" but also that she had "cared for Mrs. Sanderson *because [she] expected to be paid.*" *Id.* at 114 (emphasis added). Both aspects of her proffered testimony were barred by the statute because "the only basis of the expectation of payment was an agreement by Mr. Sanderson to make the payment." *Id.* at 114–15. Similarly, in *Boyd v. Bowen*, 145 Md. App. 635 (2002), the court held that the plaintiff was barred from testifying that "she 'understood' that she would be reimbursed [for certain legal fees she paid] at some point in the future" because the only relevance of such "underst[anding]" was based on an alleged *agreement* by the decedent to obligate her estate to reimburse

those fees. *Id.* at 663; *see also Ridgley v. Beatty*, 222 Md. 76, 83 (1960) (permitting party to "identify" certain checks, "describe" them and "state the item for which the check was given," but barring the party from "connect[ing] such payments with any 'agreement or understanding or transaction' the claimant had with the decedent").

Third, in deciding whether the statute requires exclusion of particular proffered testimony, a court must consider whether the decedent, "if alive, could, based on personal knowledge, contradict the [witness]'s testimony." *Boyd*, 145 Md. App. at 663. That is because "'[t]he general purpose of the Statute is to equalize the position of the parties by imposing silence on the survivors as to transactions with or statements by the decedent.'" *Id.* at 662 (quoting *Reddy*, 39 Md. App. at 679). Some of the Maryland cases have articulated this aspect of the rule as potentially limited to circumstances where the party's testimony "could be disputed *only* by the deceased." *Farah*, 112 Md. App. at 114 (emphasis added). Others articulate the standard as focused on preventing "self-interested perjury." *Reddy*, 39 Md. App. at 679. There is some tension among these articulations, but the fundamental point is that the rule exists in part to prevent an unfair advantage to the survivor (and unfair prejudice to the decedent's estate) from a party being permitted to testify against the estate of a person who would be the principal person who, if alive, would potentially be in a position to contradict it.

Those principles lead to the following conclusions. Defendants' request for an order entirely precluding Silk from testifying will be denied. There is certainly some testimony that Silk may provide that would not run afoul of the dead man's statute, even if in some sense all of the testimony relates to "transactions" with Frank Bond. On the other hand, some of the testimony that Silk's counsel has proffered clearly does run

afoul of the statute. For example, Count 1 is premised on an oral agreement between Silk and Frank Bond. Mr. Silk may not testify that he and Frank orally agreed that Frank's estate would pay an incentive fee based on the annuity or any oral modification of the unsigned written agreement regarding the percentage of any incentive fee to be paid. Mr. Silk may, through counsel or another witness, offer other evidence of the existence of that agreement (if such other evidence is otherwise admissible), but because Frank Bond is not alive to dispute that testimony or provide contrary testimony, the dead man's statute precludes Silk from offering that testimony.

As for Silk's proffered testimony about the work he did for Frank Bond, at least some of that testimony is permissible. Even though conceivably Frank Bond could, if alive, dispute the specific services that Silk provided, or the number of times they met to discuss it, etc., as long as the testimony focuses on the services actually rendered—as opposed to agreements to pay incentive fees based on those services—the testimony is permissible. *See, e.g.*, *Farah*, 112 Md. App. at 111–12 (trial court permitted plaintiff to testify about her years of personal services and household chores performed for the Sandersons, but not whether the decedents had agreed to a bequest as compensation for those services).

It appears Silk also would like to testify about his *understanding* of the terms of certain written agreements. This issue presents a closer question. For example, with respect to Count 3, the October 1999 agreement (ECF No. 99-6, also Plaintiff's Exhibit 8) is signed by Silk and Frank Bond and was witnessed by Howard Miller. That agreement contains several references to "taxes." The third paragraph defines "Tax Savings" as "the amount of tax saved as a result of avoiding capital gains tax on the sale

of the Westcliffe and Harbond properties because of the stepped-up basis which the partnerships will receive in your estate that they would not have received had they been transferred to Baron and Brandon at the conclusion of the GRIT." ECF No. 99-6 at 1. The agreement later states that the "results intended by us" are "an incentive to [Silk] of fifteen percent of your or your estate's income taxes saved by the Investment Baron and Investment Baron [*sic*] transactions." *Id.* at 2. Insofar as there is potential ambiguity regarding the meaning of those terms, the dead man's statute precludes Silk from testifying to his view or understanding of those terms. That would be in substance indistinguishable from him testifying to the formation of an oral contract. *See Farah*, 112 Md. App. at 114–15; *Boyd*, 145 Md. App. at 663; *Ridgley*, 222 Md. at 83. And it would be distinguishable from the husband's testimony in *Schifanelli v. Wallace*, 271 Md. 177 (1974), about his love for his late wife (whom he had shot, but contended the shooting was unintentional). *See id.* at 183 ("[the husband]'s testimony concerning these emotions is not evidence of a 'transaction' within the meaning of the statute.").

The rulings in this section are evidentiary rulings that bind the parties at trial. If there is other testimony from Silk that either side anticipates and that may benefit from the Court's focus before trial, the parties should bring that anticipated testimony to the Court's attention at the continued pretrial conference.

For these reasons, Defendants' Motion in Limine II (ECF No. 145 at 5–8) is GRANTED IN PART AND DENIED IN PART.

## II.    Expert testimony

Both sides have identified experts they intend to call at trial, and each has moved to exclude the other's expert.

Plaintiff's motion to exclude Defendants' expert, Raymond Peroutka, is denied. Plaintiff's principal concern regarding Peroutka's anticipated testimony is that he "merely echoes Defendants' legal position on one of Plaintiff's contract claims (Count Three)." ECF No. 151-1. At the motions hearing, however, Defendants confirmed that they would not be proffering testimony from Peroutka regarding the allegedly contracting parties' intent or understanding of contractual terms or eliciting opinions from Peroutka on legal matters. Rather, Peroutka's testimony will be to help the jury understand the meaning of certain tax-, estate-, and finance-related terminology, and the factual consequences of the tax plan referenced in the October 1999 agreement. *See* ECF No. 156 at 6–7. Accordingly, Plaintiff's motion to exclude Peroutka's testimony (ECF No. 151) is DENIED.[5]

Defendants' motion to exclude Plaintiff's expert, Michael Fahlman, has a different focus. ECF No. 146. First, Defendants argue that Fahlman's damages calculation for Count 3 lacks a sufficiently reliable methodology because, although the October 1999 agreement appears to have anticipated that "fair market value" would be done by "an appraiser," ECF No. 99-6 at 1, the document that Fahlman relies on for values—Plaintiff's Exhibit 22—(a) does not contained appraised values, (b) contains "hearsay and speculation," and (c) is inadmissible and unreliable in any event because "Silk has not identified the person or persons who created the document; he has not

---

[5] The Court does not at present rule on the aspect of ECF No. 151 related to the testimony of Mr. Miller, which also pertains to objections to certain deposition designations. *See* ECF No. 151-1 at 4–5. The Court will hear from the parties on that issue at the continued pretrial conference. Accordingly, ECF No. 151 is DENIED IN PART and RESERVED IN PART.

produced evidence to show why it was created, the source of the numbers contained within it, or how those numbers were calculated." ECF No. 146 at 11. As to this argument, the Court at present doubts that Plaintiff's Exhibit 22 is admissible (but will await argument at the continued pretrial conference to make a final ruling). But Silk contends that even if that document is not admissible, Fahlman was permitted to rely on it. At the continued pretrial conference, the parties shall be prepared to address this issue, specifically regarding balancing the exclusion of inadmissible evidence with experts' permissible reliance on inadmissible evidence. *See* Fed. R. Evid. 703 ("[I]f the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").

Defendants also contend that Fahlman's calculations related to the annuity are "irrelevant" because (1) "the deferral of income taxes 'into the future' is not a net tax savings; the taxes were ultimately paid," and (2) Fahlman's report refers to "economic benefit" without making clear whether that is a reference to "tax savings" (which may be relevant, but they argue proves nothing because "taxes were ultimately paid") or something else such as the time value of money that became available for investment in other ventures based on the deferral of such tax payments (which, Defendants argue, renders the opinion untethered to any actual agreement between Silk and Frank Bond). *Id.* at 15. On the latter point, although Silk contends that Fahlman's testimony will be tied directly to the terms of the December 1990 agreement and that the reference to "economic benefit" was a shorthand for tax savings, Fahlman's report does seem to assume that Silk would be entitled to an incentive fee even if taxes were merely deferred

and no taxes were actually *saved* (i.e. never paid, by Frank Bond or his estate). *See* ECF No. 146-1 at ¶ 44. It is unclear whether there is any factual basis that Frank Bond agreed to pay an incentive fee based solely on deferral of taxes, even if deferral of taxes freed up cash to invest in other ventures. *Cf. id.* ¶ 47. The parties shall address these matters at the continued pretrial conference—including confirming whether Silk disputes the assertion that "the taxes were ultimately paid" (ECF No. 146 at 15).

Accordingly, the Court continues to RESERVE on Defendants' motion to exclude the testimony of Mr. Fahlman (ECF No. 146).

Date:  July 27, 2026

_____/s/_____
Adam B. Abelson
United States District Judge