**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ROGER D. SILK,

    *Plaintiff*,

    v.

BARON BOND, *et al.*,

    *Defendants*

Civil Action No.

1:24-cv-00625-ABA

## MEMORANDUM OPINION AND ORDER

This Order rules on the remaining outstanding disputes for next week's trial, specifically related to exhibits, deposition designations, the testimony of Michael Fahlman, and time limits at trial. Because the only issues that remain outstanding following this Order are jury instructions and the verdict sheet, the third and final pretrial conference that had been scheduled for Monday, August 10, is CANCELLED. The conference regarding jury instructions and the verdict sheet will be held at an appropriate time after the trial commences.

## I.    Exhibits

During the pretrial conference on July 29, 2026, the Court ruled on the admissibility of the parties' exhibits. To ensure clarity, the below table reflects those rulings.

| Plaintiff's Exhibits | | |
|---|---|---|
| **JX #** | **Description** | **Defendants' Objections and rulings** |
| 1 | Consulting Agreement between F. Bond and R. Silk | • Dead Man's Statute (OVERRULED[1])<br>• No authentication (OVERRULED) |

---

[1] *See* ECF No. 165 at 3–4. This cross-reference applies to all objections to documents based on the dead man's statute.

1

| Plaintiff's Exhibits | | |
|---|---|---|
| JX # | Description | Defendants' Objections and rulings |
| 2 | Incentive Calculation - Roger Silk - 1991 | • Dead Man's Statute (OVERRULED)<br>• Hearsay (**RESERVED**)<br>• No authentication (OVERRULED)<br>• Relevance (**RESERVED**) |
| 3 | Memo from P. Matz to B. Bondroff, R. Silk re Frank Bond - Incentive Compensation for 1993 Tax Savings | • Dead Man's Statute (OVERRULED)<br>• Hearsay (OVERRULED)<br>• No authentication (OVERRULED)<br>• Relevance (OVERRULED) |
| 4 | Annuity Agreement between First International Insurance Company Ltd. and Bond Family Trust | • Dead Man's Statute (OVERRULED)<br>• Hearsay (OVERRULED)<br>• No authentication (OVERRULED) |
| 5 | First International Insurance Company Audit Request | • Relevance (**RESERVED**) |
| 6 | Apartment Analysis of Loan | • Dead Man's Statute (OVERRULED)<br>• No authentication (OVERRULED)<br>• Relevance (OVERRULED) |
| 7 | Letter from R. Silk to H. Miller re Apartments Agreement | • Dead Man's Statute (OVERRULED)<br>• Relevance (**SUSTAINED—EXCLUDED**)[2] |
| 8 | Apartments Agreement between F. Bond and R. Silk, witness H. Miller | • Dead Man's Statute (OVERRULED) |
| 9 | Letter from R. Silk to H. Miller re Present Value of North Point and Apartments Agreements | • Dead Man's Statute (OVERRULED)<br>• Hearsay (**SUSTAINED—EXCLUDED**)[3] |
| 10 | Memo from R. Silk to H. Miller, F. Bond, B. Bond re Annuity/Estate Planning - Fee | • Dead Man's Statute (OVERRULED) |
| 11 | Email from H. Miller to R. Silk re Annuity and Estate Tax | • Dead Man's Statute (OVERRULED) |
| 12 | Calculation of Incentive Fee to Roger D. Silk | • Dead Man's Statute (OVERRULED)<br>• Hearsay (**RESERVED**)<br>• No authentication (OVERRULED)<br>• Relevance (OVERRULED) |
| 13 | Email from H. Miller to P. Travers, cc R. Silk re Annuity of Bond Family Trust | • Dead Man's Statute (OVERRULED)<br>• Relevance (OVERRULED) |
| 14 | Email from H. Miller (via P. Herbert) to R. Silk re FIIC Annuity Contract, with attachment | • Dead Man's Statute (OVERRULED)<br>• Relevance (OVERRULED) |
| 15 | Email from H. Miller to Brandon Bond, cc F. Bond re Your e-mail of 7/27/12 with a copy to your dad | • Relevance (**SUSTAINED—EXCLUDED**) |
| 16 | Memorandum from H. Miller to File re Incentive Fees Due Roger Silk | • Dead Man's Statute (OVERRULED) |

---

[2] During the July 29, 2026, Defendants raised a relevance objection to Exhibit 7 that was not previously included in the Joint Pretrial Order. ECF No. 170, July 29, 2026 Pretrial Conference Transcript 35:14–23.

[3] The hearsay objection to Exhibit 9 may not have been addressed at the pretrial conference. Regardless, having reviewed the document, the Court hereby sustains Defendants' hearsay objection. (In any event, most of the letter, and the entire attachment, relate to North Point.)

| Plaintiff's Exhibits | | |
|---|---|---|
| JX # | Description | Defendants' Objections and rulings |
| 17 | Email from H. Miller to R. Silk re Your letter dated 2/8/19 | • Dead Man's Statute (OVERRULED) |
| 18 | Letter from H. Miller to D. Roberts (First Int'l Ins. Co. Ltd.) re Bond Family Trust Annuity | • Dead Man's Statute (OVERRULED)<br>• Relevance (OVERRULED) |
| 19 | Email from Baron Bond to R. Silk re Frank | |
| 20 | Email from Baron Bond to R. Silk cc M. Bond re Checking in | |
| 21 | Email from H. Miller to R. Silk re First International Insurance Co. - Bond DVA - Death of Mr. Bond - consideration as to full withdrawal and closure | |
| 22 | Email from J. Daley to R. Silk, cc Baron Bond, M. Bond re Foundation Group, with attachments | • Dead Man's Statute (OVERRULED)<br>• Hearsay (OVERRULED)<br>• No authentication (OVERRULED)<br>• Relevance (OVERRULED)[4] |
| 23 | Email from Baron Bond to R. Silk, M. Bond re Thank You | |

---

[4] The Court overruled these objections to Plaintiff's Exhibit 22 at the pretrial conference as to ECF No. 145-2 at 1, 16 **only**. Defendants have renewed their objections to this document, including based on a discrepancy between Plaintiff's counsel's representation at the pretrial conference and the metadata for the pertinent spreadsheet attachment. ECF No. 171 at 1 n.2. Plaintiff has responded to those objections. ECF No. 172 at 1. The Court has reviewed the additional submissions, along with the metadata screenshots and the testimony of Mr. Fahlman and concludes that Exhibit 22 satisfies the standard for relevance under Rule of Evidence 401 and is not otherwise subject to exclusion under Rule 403. The spreadsheet does appear to have fairly minimal probative value for the reasons Defendants articulate. But Mr. Miller at least arguably referred to certain figures as "FMV" (ECF No. 145-27), and the spreadsheet uses the term "appraisal" at least with respect to the Harbond property (ECF No. 145-22 at 16). Mr. Miller may have been referring to something else or his subsequent email may have minimal probative value on the question of whether the figures in the spreadsheet constitute appraised values or would otherwise satisfy Plaintiff's burden of proof; plus the record is very unclear about what "appraisal" the spreadsheet refers to. Given that Exhibit 22 seems to be the only evidence supporting a necessary element for Count 3, the jury may conclude that Plaintiff is unable to prove that claim—and by admitting Exhibit 22 the Court does not rule one way or the other on whether there will be sufficient evidence in the record to support a verdict for Plaintiff on Count 3; that will be a matter to consider at the close of Plaintiff's case in chief or after trial. The point for now is the Court's ruling admitting Exhibit 22 stands.

| Plaintiff's Exhibits | | |
|---|---|---|
| **JX #** | **Description** | **Defendants' Objections and rulings** |
| 24 | Letter from R. Silk to Baron Bond | • Dead Man's Statute (OVERRULED)<br>• Hearsay (**SUSTAINED—EXCLUDED**)<br>• Relevance (MOOT)<br>• No authentication (MOOT)<br>• Includes matters (i.e. North Point) no longer in the case (MOOT) |
| 25 | Email from H. Miller to R. Silk re Need to talk to you tonight or Monday after 1:30 EST | • Hearsay (OVERRULED)<br>• Work Product (OVERRULED)<br>• Includes matters (i.e. North Point) no longer in the case (OVERRULED) |
| 26 | Email from H. Miller to R. Silk re Hard to understand | |
| 27 | Email from H. Miller to R. Lambert re Fees due Roger Silk... | • Dead Man's Statute (OVERRULED) |
| 28 | Email from R. Lambert to H. Miller re Fees due Roger Silk... | • Hearsay (OVERRULED)<br>• Includes matters (i.e. North Point) no longer in the case (OVERRULED) |
| 29 | Frank Bond Calculation of Incentive Fee to Roger D. Silk as of 12/31/2019 | • Hearsay (**RESERVED**)<br>• Work product (**RESERVED**) |
| 30 | Letter from H. Miller to D. Roberts (First Int'l Ins. Co. Ltd.) re Bond Family Trust Annuity Policy | • Relevance (**RESERVED**) |
| 31 | Email from H. Miller to P. Herbert re GRIT/Roger Silk | • Dead Man Statute (OVERRULED)<br>• Work product (OVERRULED)<br>• Includes matters (i.e. North Point) no longer in the case (OVERRULED) |
| 32 | Letter from J. Renner to Hon. Grace G. Connolly re Estate of Frank Bond | • Dead Man's Statute (OVERRULED)<br>• Hearsay (**SUSTAINED—EXCLUDED**)<br>• Relevance (**SUSTAINED—EXCLUDED**)<br>• Pleading is not evidence (**SUSTAINED—EXCLUDED**) |
| 33 | Letter from S. Satisky to J. Renner re Disallowance of Claim Against Estate of Frank Bond | • Relevance (**SUSTAINED—EXCLUDED**)<br>• Pleading is not evidence (**SUSTAINED—EXCLUDED**) |
| 34 | Answer | • Pleading is not evidence (**SUSTAINED—EXCLUDED[5]**)<br>• Hearsay (MOOT)<br>• Relevance (MOOT) |
| 35 | [*withdrawn*]<br>Letter from First Int'l Ins. Co. SPC to H. Miller re Bond Family Trust Annuity Contract | • Hearsay (N/A; WITHDRAWN) |
| 36 | Email from J. Nusinov to J. Cyrulnik re Fees due Roger Silk... | • Hearsay (**RESERVED**)<br>• Prejudicial/Relevance (**RESERVED**) |

---

[5] The Answer as such (i.e. in full) is excluded. If there are particular statements that constitute party admissions (express or adoptive), they must be extracted from the Answer and presented in standalone form (ideally in the form of a stipulation).

| Plaintiff's Exhibits | | |
|---|---|---|
| JX # | Description | Defendants' Objections and rulings |
| 37 | Defendants' Privilege Log | • Hearsay (**RESERVED**)<br>• Relevance (**RESERVED**)<br>• Lack of personal knowledge (**RESERVED**)<br>• Work product (OVERRULED) |
| 38 | Defendants' Amended Privilege Log | • Hearsay (**RESERVED**)<br>• Relevance (**RESERVED**)<br>• Lack of personal knowledge (**RESERVED**)<br>• Work product (OVERRULED) |
| 39 | Expert Report of Michael A. Fahlman | • Hearsay (**SUSTAINED—EXCLUDED,** *see* **ECF No. 162 at 3–4**)<br>• Cumulative and Unfair Prejudice (MOOT)<br>• Contains factual assertions not otherwise in evidence (MOOT)<br>• Lack of foundation (MOOT)<br>• Contains statements beyond permissible scope of expert testimony (MOOT) |
| 40 | Expert Rebuttal Report of Michael A. Fahlman | • Hearsay (**SUSTAINED—EXCLUDED,** *see* **ECF No. 162 at 3–4**)<br>• Cumulative and Unfair Prejudice (MOOT)<br>• Contains factual assertions not otherwise in evidence (MOOT)<br>• Lack of foundation (MOOT)<br>• Contains statements beyond permissible scope of expert testimony (MOOT) |

| Defendants' Exhibits[6] | | |
|---|---|---|
| JX # | Description | Plaintiff's Objections |
| 41 | Gifts of Partnership Interests | • FRE 802 (OVERRULED)<br>• FRE 901 (OVERRULED)<br>• Relevance (OVERRULED) |
| 42 | Signed Incentive Fee Agreement | • Relevance (OVERRULED) |
| 43 | Chronos, Inc. Letter and Memo (Silk to Miller) | • FRE 802 (OVERRULED)<br>• FRE 901 (OVERRULED)<br>• Relevance (OVERRULED) |
| 44 | Miller memo re: Apollo & Co. | • FRE 802 (OVERRULED)<br>• FRE 901 (**RESERVED**)<br>• Relevance (OVERRULED) |

---

[6] Whereas Defendants identified relevance-based objections in the joint pretrial order, ECF No. 147-1, Plaintiff initially rested on his right to reserve relevance objections until trial. *See* ECF No. 141 at 4. At pretrial conference #2 on July 29, 2026, Plaintiff identified the Defendants' exhibits that he contends are irrelevant. Those relevance objections are incorporated into this chart. ECF No. 170, Pretrial Conference Transcript 76:1–24.

| Defendants' Exhibits[6] | | |
|---|---|---|
| **JX #** | **Description** | **Plaintiff's Objections** |
| 45 | Management Services Agreement (Apollo and FIIC) | • FRE 802 (OVERRULED)<br>• FRE 901 (**RESERVED**)<br>• Relevance (OVERRULED) |
| 46 | Silk letter to Miller | |
| 47 | Silk letter to Miller re: Shelda's passing | |
| 48 | Silk letter to Miller re: estate taxes | |
| 49 | Baron email to Silk | |
| 50 | Estate of Frank Bond 706 Estate Tax Return | • FRE 802 (OVERRULED)<br>• FRE 901 (OVERRULED)<br>• Relevance (OVERRULED) |
| 51 | Report of Estate Tax Examination Changes | • FRE 802 (**RESERVED**)<br>• FRE 901 (**RESERVED**)<br>• Relevance (**RESERVED**) |
| 52 | Refinancing documents | • FRE 802 (**RESERVED**)<br>• FRE 901 (**RESERVED**)<br>• Relevance (**RESERVED**) |
| 53 | Apollo Historical Fees | • FRE 802 (**RESERVED**)<br>• FRE 901 (**RESERVED**)<br>• Relevance (**RESERVED**) |

## II.     Deposition Designations

Plaintiff has proposed to offer, during Plaintiff's case in chief, certain testimony given by Defendant Miller during his deposition. The Court hereby rules on Defendants' objections (ECF No. 147-3) as follows. Plaintiff shall ensure that any testimony as to which an objection has been sustained is excluded from the portion of the video deposition that is shown to the jury.

| **Testimony** | **Defendants' objection(s)** |
|---|---|
| 436:7-437:1 | • Improper expert opinion (OVERRULED) |
| 437:16-21 | • Relevance (OVERRULED)<br>• Lack of foundation (OVERRULED) |
| 438:6-13 | • Speculation (SUSTAINED) |
| 438:17-24 | • Speculation (SUSTAINED) |
| 439:5-441:7 | • Speculation (OVERRULED)<br>• Lack of foundation (OVERRULED)<br>• Improper expert opinion (OVERRULED) |
| 441:15-24 | • Speculation (SUSTAINED)<br>• Beyond scope of 30b6 topics (SUSTAINED) |

| Testimony | Defendants' objection(s) |
|---|---|
| 442:6-443:13 | • Speculation (OVERRULED) |
| 493:6-15 | • Relevance (SUSTAINED) |
| 495:10-496:21 | • Hearsay (OVERRULED)<br>• Speculation (OVERRULED) |
| 499:23-500:4 | • Relevance (OVERRULED) |
| 507:3-18, 507:21-508:8, 508:11-14 | • Speculation (OVERRULED)<br>• Improper expert opinion (OVERRULED)<br>• Relevance (OVERRULED) |
| 510:8-12, 510:15-511:3, 511:6-15 | • Speculation (OVERRULED) |
| 512:13-513:5 | • Speculation (SUSTAINED) |
| 513:11-19 | • Relevance (OVERRULED)<br>• Improper expert opinion (OVERRULED) |
| 514:4-14, 514:18-515:12 | • Improper expert opinion (OVERRULED)<br>• Relevance (OVERRULED) |
| 516:18-517:10 | • Speculation (OVERRULED) |
| 517:15-518:18 | • Speculation (OVERRULED)<br>• Improper expert opinion (OVERRULED) |
| 523:3-524:21 | • Hearsay (OVERRULED)<br>• Work product (OVERRULED)<br>• Lack of foundation (OVERRULED) |
| 525:6-24 | • Speculation (SUSTAINED)<br>• Lack of foundation (SUSTAINED)<br>• Hearsay (MOOT)<br>• Work product (MOOT) |
| 526:2-9 | • Speculation (SUSTAINED) |
| 528:1-4 | • Speculation (SUSTAINED)<br>• Relevance (MOOT)<br>• Lack of foundation of declarant's approval process (MOOT) |
| 530:1-20 | • Speculation (OVERRULED)<br>• Relevance (OVERRULED)<br>• Work product (OVERRULED) |

## III.    Michael Fahlman Testimony

Defendants have moved to exclude the testimony of Plaintiff's damages expert, Michael Fahlman. ECF No. 146. The Court previously reserved on the question. *See* ECF No. 165 at 10–12. Since then, the Court heard argument on the motion at the July 21, 2026, pretrial conference, and the parties filed supplemental submissions that in part addressed the question of the admissibility of Mr. Fahlman's testimony. ECF Nos. 171 &

172. Mr. Fahlman is offered as a damages expert, not a real estate appraisal expert. ECF No. 146-1 (Fahlman expert report) ¶ 8 ("I was asked to perform forensic accounting and analyze Mr. Silk's damages arising from alleged breaches of contract, and to apply my skills, knowledge, experience, education, and training to provide forensic accounting and damages opinions in this matter."). Defendants argue that Mr. Fahlman's testimony should be excluded both with respect to the Apartments Agreement (Count 3) and the annuity (Count 1).

### A.    Count 3

With respect to Count 3, Defendants argue that Mr. Fahlman's testimony should be excluded because he relied exclusively on the "Real Estate Entities, Net Value as of 083119" spreadsheet attached to Jeff Daley's August 13, 2020 email (Plaintiff's trial exhibit 22) as the factual basis for his conclusion that the strategy addressed in the Apartments Agreement resulted in "tax savings." ECF No. 146 at 11; *see* ECF No. 146-1 ¶ 42; *see also id.* ¶ 36 ("For the formula's 'Total Value' input, I used the values from the Real Estate Valuation [referring to Plaintiff's Exhibit 22] discussed above. Per the Real Estate Valuation, Harbond's $27.1 million value and Warwick's $12.9 million value as of August 31, 2019, were 'based on appraisal,' and Westcliffe's $14.6 million value was 'based on anticipated re-financing Cap Value.'"). As stated above (n.4), the Court has ruled that Exhibit 22 has sufficient probative value to be admissible; in the Court's judgment the question of how probative the *Real Estate Entities, Net Value* spreadsheet is for Count 3 goes to weight, not admissibility.

Defendants argue that even if Exhibit 22 is admissible, Plaintiff has not shown that Mr. Fahlman's testimony satisfies the requirements in Federal Rule of Evidence 702 that Mr. Fahlman's testimony be "based on sufficient facts or data," be "the product

of reliable principles and methods," and "reflect[] a reliable application of [reliable] principles and methods to the facts of the case." Fed. R. Evid. 702. *See* ECF No. 146 at 10–14. But Plaintiff has pointed to sufficient indicia of reliability to satisfy those standards. Plaintiff points out, among other things, that "Defendants sent this information to Silk on August 13, 2020, after Frank Bond's passing, specifically in the context of Silk's effort to calculate the fees he was owed," ECF No. 157 at 6 (citing ECF No. 145-22); that "Defendants sent the information via Jeff Daley, CFO of the Bond family's real-estate company," *id.* (citing ECF No. 145-22); that Mr. Daley sent his email to Mr. Silk "copying Baron Bond" and did not include any "disclaimers . . . about its reliability," *id.*; and that Defendant Miller sent an email about six weeks after Mr. Daley's August 13, 2010, email confirming that fair market values had been sent to Silk, ECF No. 145-27.[7] Defendants have pointed out various considerations that do appear to undercut the probative value of that spreadsheet with respect to Defendants' liability or damages on Count 3, as well as the persuasiveness of Mr. Fahlman's proffered testimony given his reliance on that spreadsheet—including that the spreadsheet appears to contain values of the *entities* listed, not the underlying real properties. But similar to the admissibility of Exhibit 22, the Court concludes that these disputes related to Mr. Fahlman's testimony go to weight rather than admissibility. Plaintiff has satisfied the requirements of Rule 702 with respect to Mr. Fahlman's testimony in support of Count 3.

---

[7] Defendant Miller's email refers to the FMVs as the numbers under the column "FGroup Et Al. Net Value 8/31/19" on Exhibit 22. *See* ECF No. 145-27; ECF No. 145-22 at 16. It appears that Mr. Fahlman conducted his calculations based on the values under the column "Estimated Values 8/31/19". ECF No. 146-1 ¶ 36; ECF No. 146-1 at 30. This does not change the Court's holding here as this again goes to weight rather than admissibility of the numbers in the chart.

Defendants also argue that even if it was reasonable for Mr. Fahlman to consider the figures in the *Real Estate Entities, Net Value* spreadsheet, it was unreasonable for Mr. Fahlman to simply "adopt" the values on that spreadsheet, as opposed to, for example, analyzing whether the figures reflected property valuations (as opposed to entity valuations) or whether, to the extent the spreadsheets arguably referred indirectly to property valuations, whether those valuations constituted reliable appraisals of the underlying properties. *See* ECF No. 171 at 1–3. Those points may undermine the probative value of Mr. Fahlman's testimony, such as in light of the plain language of the Apartments Agreement requiring a property appraisal, but the Court is satisfied that the threshold for reliability to permit Mr. Fahlman to testify in support of Count 3 has been satisfied.

### B.    Count 1

With respect to Count 1, Mr. Fahlman's principal opinion is that he "understand[s]" that Mr. Silk advised Frank Bond regarding a private variable annuity that allowed Bond to *defer* payment of income taxes on "income or gains" on the invested amount. ECF No. 146-1 ¶ 43. Mr. Fahlman acknowledges that any accrued income/gains would ultimately be taxable. *Id.* ¶ 45. And the (unsigned) document that Silk relies on to provide (some of) the alleged terms of the incentive fee agreement in Count 1 states that any incentive fee would be calculated as a percentage of "each year's tax *savings* resulting from my efforts." ECF No. 145-1 at 1. Accordingly, Mr. Fahlman acknowledges that even if Mr. Silk is entitled to some incentive fee based on the annuity, he is not entitled to a percentage based on the deferred taxes. ECF No. 146-1 at 31 (Schedule 3). Rather, he (1) calculated "the amount of tax that Mr. Bond would have paid each year but-for his ability to defer taxes," (2) then calculated "the cumulative tax-

10

deferred amount in the Annuity and multiplied it by the annual rate of return," and (3) then calculated "the *earnings and economic benefit from the cumulative deferred tax under the Annuity structure, and then multiplied that amount by 15%.*" *Id.* ¶ 47 (emphasis added).

Defendants argue that that opinion is not *relevant* to Count 1 because, even if the unsigned December 4, 1990, letter constituted an agreement between Mr. Silk and Frank Bond, the express terms of that agreement limited any incentive fee due to taxes actually *saved—i.e.*, taxes that did not end up needing to be paid at all, not the "economic benefit" that conceivably could arise from returns on investing the funds that otherwise would have been paid in taxes absent such deferral. ECF No. 146 at 15. Defendants specifically point to the language in the December 1990 letter stating that "[t]ax savings will be calculated as the difference between the tax actually accrued (such as income tax, capital gains tax, estate tax, etc.) and the tax that would have accrued without my efforts to reduce taxes." ECF No. 145-1 at 1. In other words, by defining tax savings as taxes that did not *accrue*, Defendants argue, that document does not form any factual basis for Mr. Fahlman to opine about incentive fees based on some other "economic benefit." Indeed, Mr. Fahlman conceded at deposition that the term "economic benefit" does not appear in the December 1990 letter. ECF No. 171-4 at 3–4.

This is a closer call than on whether there is a relevant factual basis for Mr. Fahlman's testimony on Count 3. Mr. Fahlman is not a fact witness, and so his testimony is not admissible to prove whether the December 1990 letter constitutes an agreement (or that otherwise Silk and Frank Bond entered an oral agreement consistent with those terms), or to resolve any ambiguity in that language. If Mr. Fahlman offers testimony on those topics, Defendants may be entitled to a limiting instruction. But the

Court construes Mr. Fahlman's anticipated testimony to be contingent: *if* the jury concludes based on admissible evidence and without speculation that there was enforceable agreement to pay an incentive fee based on tax savings from the annuity strategy, and *if* the jury concludes that "each year's tax savings" and/or "the tax difference between the tax actually accrued . . . and the tax that would have accrued without my efforts to reduce taxes" provided for an incentive fee based on the investment returns that became possible from *deferring* taxes (as opposed to actually saving taxes), then Mr. Fahlman's testimony will provide the calculations of how such incentive fee totals $637,791.

It is unclear to the Court whether Plaintiff will be able to establish those factual predicates through admissible evidence. And unlike with Count 3, there are no underlying documents that Mr. Fahlman relies on in support of his opinion on Count 1 other than the December 1990 letter itself. But just as the December 1990 document was sufficient to avoid summary judgment on Count 1, *see* ECF No. 129 at 26, the document itself provides sufficient factual basis for Plaintiff to argue to a jury to construe that document consistent with those factual predicates. Accordingly, Mr. Fahlman will be permitted to offer that contingent testimony to the jury.

*   *   *

For these reasons, Defendants' motion to exclude Mr. Fahlman's testimony (ECF No. 146) is DENIED.

## IV.   Time limits

When the Court set the trial date, the parties agreed that the trial in its entirety would last no more than four days and have been on notice since May 1, 2026 that the

trial must conclude by the end of Friday, August 14. ECF No. 137.[8] To ensure equitable trial time between the parties, each side shall be limited to **7.5 hours total** of trial time. This includes opening statements, any time spent examining witnesses (direct, cross, or redirect), and closing arguments. Objections and bench conferences will not suspend the time limit. The parties will be responsible for tracking time and shall confer at each break to align their time-tracking records.

Date:  August 7, 2026

                                                                       /s/

Adam B. Abelson
United States District Judge

---

[8] The Court offered various options for a 5-day trial; due to Plaintiff's counsel's travel schedule, the parties selected a 4-day window rather than a 5-day window. See ECF Nos. 133 & 134.